UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL HALE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:22-cv-02036-JPH-TAB |
| | ) |
| WEXFORD OF INDIANA LLC, | ) |
| MARTIAL KNIESER Dr., | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Michael Hale brought this case against Defendants Wexford of Indiana, LLC and Dr. Martial Knieser. He alleges that Dr. Knieser was deliberately indifferent to his spinal stenosis, sciatica, spinal degenerative disease, and arthritis and tendinitis in his knee. He attributes his inadequate medical care to Wexford's custom of failing to maintain adequate medical records, falsifying medical records, and failing to respond to serious medical conditions in a timely manner.

Defendants have moved for summary judgment. Dkt. [128]. For the reasons below, that motion is **granted**.

# I.
# Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the

record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to

2

Mr. Hale and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

### A. The Parties

At all relevant times, Mr. Hale was an Indiana Department of Correction ("IDOC") inmate housed at Pendleton Correctional Facility. Dkt. 130-2 at 4 (11).[1]

Dr. Knieser was a physician employed by Wexford at Pendleton from March 2, 2020, through June 30, 2021. Dkt. 130-1 at 1 ¶ 2.

Wexford was the private corporation that contracted with IDOC to provide medical care to inmates. *See* dkt. *id.*

### B. Mr. Hale's Treatment by Dr. Knieser

Before Dr. Knieser began treating him, Mr. Hale had a "long medical history" of neck, shoulder, and knee pain, which had been treated with prescription medications including Tramadol, Gabapentin, Trileptal, and Tylenol. Dkt. 130-1 at 1–2. Mr. Hale had also been diagnosed with nerve pain, which had been treated with Trileptal. *Id.*

Dr. Knieser first treated Mr. Hale in April 2020, when Mr. Hale came to Pendleton's medical unit screaming and complaining that he could not walk or stand. *Id.* at 2; dkt. 130-3 at 6-7. Dr. Knieser gave him 60 mg of Toradol and ordered that he be sent to the emergency room for x-rays and evaluation. Dkt. 130-3 at 7; dkt. 130-1 at 2. Mr. Hale returned to Pendleton the same day with

---

[1] The exhibit with Mr. Hale's deposition transcript has four pages of testimony per one page of the PDF. The Court cites first to the page of the PDF and then to the page of the deposition in parentheses.

normal x-ray results and a diagnosis of "spasms and cramps," likely from an injury he'd suffered a few days earlier. Dkt. 130-3 at 9; dkt. 130-1 at 2. Dr. Knieser noted a "muscle strain" and ensured that Mr. Hale had pain relievers and anti-inflammatory medication. Dkt. 130-3 at 10; dkt. 130-1 at 2.

Dr. Knieser did not see Mr. Hale again for several months. Dkt. 130-1 at 2. In September, Dr. Knieser renewed Mr. Hale's formulary exception request for his Trileptal[2] prescription. *Id.* at 3; dkt. 130-3 at 22. He noted that Mr. Hale had lower back pain due to a diagnosis of severe spinal stenosis and that he would "get records to validate spinal stenosis." Dkt. 130-3 at 21-22; dkt. 130-1 at 3.

In October 2020, Dr. Knieser saw Mr. Hale twice. The first visit was regarding his ears being plugged with excessive wax build-up. Dkt. 130-1 at 3; dkt. 130-3 at 28–29. That same day, Mr. Hale informed medical staff that Trileptal was no longer effective and he did not wish to continue taking it, and non-party NP Sheri Wilson discontinued the prescription. Dkt. 130-1 at 3; dkt. 130-3 at 27. Two days later, Dr. Knieser saw Mr. Hale again and they discussed his complaints of hearing difficulty and plugged ears, and upper body soreness related to spinal stenosis. Dkt. 130-1 at 3; dkt. 130-3 at 31. Dr. Knieser performed a detailed neurological exam. Dkt. 130-1 at 3. He noted that Mr. Hale had "complete function of upper body with only subjective issues" and

---

[2] Dr. Knieser states in his affidavit that "Trileptal is an anti-epileptic medication (similar to gabapentin) but is also approved in low dosages to treat nerve type pain." Dkt. 130-1 at 2.

that he was still "searching for records of cervical stenosis and MRI." Dkt. 130-3 at 32-33.

Dr. Knieser next saw Mr. Hale in February 2021, when they again focused on his ear issues. *Id.* at 34. Dr. Knieser noted his belief that it was a chronic issue and ordered an antibiotic. *Id.* at 35. Dr. Knieser saw Mr. Hale for the last time in June 2021, after Mr. Hale received a head contusion in an altercation. *Id.* at 37-39. Dr. Knieser ordered x-rays of Mr. Hale's face and noted his history of spinal stenosis. *Id.* at 38-39.

### C. Mr. Hale's Statements on his Treatment

Mr. Hale argues in his unsworn brief that Dr. Knieser removed and falsified parts of Mr. Hale's medical records. Dkt. 133 at 3. In his affidavit, Mr. Hale testifies that he "did everything [he] could to receive proper care for these serious medical needs and was forced to suffer while being treated by Dr. Martial Knieser," who treated him "in a vindictive manner because this was a time when there was a COVID-19 outbreak at the facility and all around the world and [his] medical needs weren't considered a priority." Dkt. 133-1 at 56-57. Mr. Hale reiterated this belief in his deposition testimony:

> But because of COVID, and because of what was going on, because of all the chaos in the world at the time, that's why I received inadequate – delayed inadequate medical care. People weren't focused on Michael Hale and his ailments. They were focused on, you know, trying to beat the epidemic that was going on in the world.
>
> So that's why I feel that I was, you know, forgot about, and nobody gave me medical treatment. And that's why I believe that I need to be compensated for the delayed

5

> inadequate medical care that I received that's clearly on record.

Dkt. 130-2 at 17 (63). Mr. Hale also testified that Dr. Knieser sent him to the ER the first time he saw him with complaints of pain, and when Mr. Hale told Dr. Knieser that he had pressure in his brain. *Id.* at 8 (26), 11 (39).

### III. Discussion

Under the Eighth Amendment, states must "provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

Defendants don't dispute, at this stage, that Mr. Hale's medical conditions were objectively serious, dkt. 129 at 15, so only deliberate indifference to those needs is at issue. Deliberate indifference requires more than negligence or even objective recklessness. *Id.* Rather, Mr. Hale "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). "Of course, medical professionals rarely admit that they deliberately opted against the best

course of treatment. So in many cases, deliberate indifference must be inferred from the propriety of their actions." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021).

Deliberate indifference may occur when the defendant provides treatment that substantially departs "from accepted professional judgment, practice, or standards"; refuses "to take instructions from a specialist"; persists "in a course of treatment known to be ineffective; chooses "an 'easier and less efficacious treatment' without exercising professional judgment;" or delays treatment with "no penological purpose." *Petties*, 836 F.3d at 729.  The Court examines the totality of Mr. Hale's medical care when evaluating whether the defendants were deliberately indifferent. *Wilson v. Adams*, 901 F.3d 816, 821 (7th Cir. 2018).

### A. Dr. Knieser

Mr. Hale argues that Dr. Knieser was deliberately indifferent to his spinal stenosis, sciatica, and spinal degenerative disease, as well as to his arthritis and tendinitis in his knee.  Dkt. 133 at 1.

He first relies on Dr. Knieser's testimony that he did not see Mr. Hale "for several months" after Mr. Hale returned from the ER with a diagnosis of "spasms and cramps." Dkt. 133 at 2–3; dkt. 130-1 at 2. Mr. Hale designates no evidence, however, that spasms and cramps required a follow-up appointment with Dr. Knieser or to dispute Dr. Kneiser's testimony that Mr. Hale did not have "any urgent medical needs during that time." Dkt. 130-1 at 2. Nor does Mr. Hale designate evidence to dispute that when he had a shoulder injury

7

during that time, he was assessed and treated by NP Wilson. *Id.* Mr. Hale's care during this time therefore does not allow a reasonable jury to find that Dr. Knieser "disregarded a substantial risk of harm." *Petties*, 836 F.3d at 728.

 Mr. Hale next argues that Dr. Knieser was deliberately indifferent for continuing to prescribe Trileptal after Mr. Hale told him it didn't relieve his pain. Dkt. 133 at 3. But that argument is in Mr. Hale's unsworn brief, and Mr. Hale has not designated evidence that Dr. Knieser was informed of Mr. Hale's complaint about Trileptal. *See id.* He also has not designated evidence to contest that when he asked to stop Trileptal, that request was referred not to Dr. Knieser but to NP Wilson, who discontinued it. Dkt. 130-1 at 3; *see* dkt. 133-1 at 1; 130-3 at 27 (NP Wilson discontinued Mr. Hale's prescription on October 27, 2020, based on his request on Health Care Request Form 333476).

 Even if Mr. Hale had told Dr. Knieser that Trileptal was ineffective, the Seventh Circuit "routinely ha[s] rejected claims . . . based on a preference for one medication over another unless there is evidence of a *substantial* departure from acceptable professional judgment." *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019). Mr. Hale has not designated evidence to dispute Dr. Knieser's testimony that he monitored Mr. Hale's pain and renewed his pain medication, so no reasonable jury could find such a substantial departure. Dkt. 130-1 at 2–3; *see Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (The Eighth Amendment does not require that an inmate be free of pain, and "[w]hether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most

8

extreme situations."). Moreover, Mr. Hale suggests that he should've received Gabapentin, dkt. 133 at 6–7, but has not contested Dr. Knieser's testimony that Gabapentin is "increasingly disfavored . . . due to its high risk of abuse," dkt. 130-1 at 6. Indeed, Dr. Knieser testified that "the prescription analysis" at an October 2020 appointment—after Mr. Hale had discontinued Trileptal—"was rather difficult" because he "did not believe that Mr. Hale . . . required narcotic-level pain medication." *Id.* at 4. On this evidence, no reasonable jury could find that Dr. Knieser was deliberately indifferent to Mr. Hale's pain or failed to exercise medical judgment. *Lockett*, 937 F.3d at 1024 (A "deliberate decision, based on a professional assessment" not to prescribe medication with a high risk of abuse "cannot support an Eighth Amendment violation.").

Mr. Hale also argues that he sought treatment for knee pain, which other doctors had treated in the past. Dkt. 133 at 8. Again, however, he has not designated evidence that Dr. Knieser was aware of any knee condition that required treatment. *See id.*; dkt. 130-1 at 1, 6 (Dr. Knieser's undisputed testimony that Mr. Hale's medical records referred to knee issues from before he began treating Mr. Hale, but not while he was Mr. Hale's treating physician).

Finally, Mr. Hale argues that parts of his medical records are missing and were falsified by Dr. Knieser. Dkt. 133 at 4–6. Specifically, he contends that a record documenting his severe spinal stenosis and a record relating to a CT scan performed at IU Methodist Hospital were missing. *Id.* However, Mr. Hale has not identified any basis for personal knowledge to support his speculation about records being removed. *See Simpson v. Franciscan All.*, 827

9

F.3d 656, 662 (7th Cir. 2016) (testimony containing "only vague, conclusory assertions about incidents outside [plaintiff's] personal knowledge" not sufficient to survive summary judgment); *Igasaki v. Ill. Dep't of Fin. & Prof. Reg.*, 988 F.3d 948, 956 (7th Cir. 2021) (speculation or conclusory allegations alone are insufficient to survive summary judgment). Regardless, while Dr. Knieser wanted additional records about Mr. Hale's spinal stenosis, the undisputed evidence is that Dr. Knieser investigated and treated Mr. Hale's condition and pain. Dkt. 130-1 at 4–5.

The entirety of Dr. Knieser's treatment of Mr. Hale therefore does not allow a reasonable jury to find deliberate indifference. *See Lockett*, 937 F.3d at 1025 (no reasonable jury can find deliberate indifference when the defendant is "continually solicitous of and responsive to" the inmate's medical needs"). Dr. Knieser sent Mr. Hale to the ER multiple times for diagnostic testing, maintained his medication prescriptions, and treated conditions like plugged ears and head contusions that are not part of Mr. Hale's claims in this case. Dkt. 130-3 at 6-9, 29-35, 37-39. Mr. Hale also recognizes that Dr. Knieser was exercising his judgment in balancing competing priorities during a deadly global pandemic. Dkt. 130-2 at 8 (26), 11 (39), 17 (63); *see Lockett*, 937 F.3d at 1023 (courts "defer to a medical professional's treatment decision unless no minimally competent professional would have so responded under the circumstances").

Accordingly, Dr. Knieser is entitled to summary judgment on this claim.

**B. Wexford**

Mr. Hale's claim against Wexford may proceed only under the theory of liability outlined in *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978). Private corporations acting under color of state law—including those that contract with the state to provide essential services to prisoners—are treated as municipalities for purposes of Section 1983. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021). Wexford cannot be held liable simply for its employees' actions. *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021).

Thus, to prevail on a claim against Wexford, Mr. Hale must first show that he was deprived of a constitutional right caused by a Wexford custom or policy or failure to implement a needed policy. *Dean*, 18 F.4th at 235. As the Seventh Circuit has explained:

> There are at least three types of municipal action that may give rise to municipal liability under § 1983: (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority. Inaction, too, can give rise to liability in some instances if it reflects a conscious decision not to take action.

*Id.* Mr. Hale testified that he sued Wexford because "they're a company that employed [ ] Dr. Knieser, and they should be held accountable for what their doctors and nursing staff does." Dkt. 130-2 at 8 (29). Mr. Hale's *Monell* claim cannot succeed that basis, however, because Wexford is not liable for its

11

employee's actions. *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 (7th Cir. 2002) ("It is well-established that there is no *respondeat superior* liability under § 1983."). Moreover, no reasonable jury could find that Dr. Knieser violated Mr. Hale's Eighth Amendment rights, so there is no basis for Wexford to be liable. *Donald v. Wexford Health Servs.*, 982 F.3d 451, 463 (7th Cir. 2020) ("[I]f the plaintiff's theory of *Monell* liability rests entirely on individual liability . . . then negating individual liability will automatically preclude a finding of *Monell* liability.").

Mr. Hale then argues that Wexford "failed to maintain a complete and accurate record of his medical records which [led] to the Plaintiff receiving delayed and inadequate medical care." Dkt. 133 at 9. Mr. Hale has not designated evidence, however, allowing a reasonable jury to find that Wexford has a custom or policy of failing to maintain adequate medical records. Instead, he cites a medical report of a CT scan he received on July 7, 2017, at IU Methodist Hospital that was not included in his IDOC medical records. Dkt. 136 at 2. One instance of Wexford omitting a single page from a single inmate's medical records is insufficient to demonstrate Wexford has a widespread custom or policy of failing to maintain adequate medical records. *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010) ("[A] plaintiff must demonstrate that there is a policy at issue rather than a random event.").

Mr. Hale also cites a declaration from another inmate, Yohan Flame–Bey, who believes that Wexford failed to adequately treat a parasite he believes he had and a Vitamin B12 deficiency in 2019. Dkt. 135 at 3-6. But Mr. Flame-

12

Bey's medical records attached to his declaration indicate that IDOC documented his concerns and the treatment provided for them, *id.* at 9-12, 18–25, so they do not provide evidence of a custom or policy of falsifying records as required for a *Monell* claim. *See Thomas*, 604 F.3d at 303. Since no reasonable jury could conclude from the designated evidence that Wexford had a custom or policy of failing to maintain adequate medical records, it is entitled to summary judgment on this claim.

### IV.
### Conclusion

Defendants' motion for summary judgment is **GRANTED**. Dkt. [128]. Final judgment will issue in a separate entry.

**The clerk is directed** to update Dr. Knieser's first name from "Marital" to "Martial."

**SO ORDERED.**

Date: 3/26/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

MICHAEL HALE
884687
MIAMI - CF
MIAMI CORRECTIONAL FACILITY
Inmate Mail/Parcels
3038 West 850 South
Bunker Hill, IN 46914-9810

All Electronically Registered Counsel

13